IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | |
|---|---|
| **MARVIN MUHAMMAD/SMITH** | * |
| **ADC#86280** | * |
| | * |
| **Plaintiff** | * |
| | * |
| v. | *   Case No. 5:06CV00022BD |
| | * |
| **CHARLES FREYDER,** *et al.* | * |
| | * |
| **Defendants** | * |

## MEMORANDUM AND ORDER

The Plaintiff, incarcerated at the Arkansas Department of Correction (ADC) Varner Super Max unit, filed this *pro se* action under 42 U.S.C. § 1983 (docket entry #2) alleging that the Defendants violated the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000ccc-1. The Defendants filed a Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Facts to which the Plaintiff filed Responses (docket entries #29, #30, #31, #33 and #34). The Defendants' motion (docket entry #29) is granted.

**I.   Background**

The Plaintiff alleges that the Defendants violated his rights under the First Amendment and RLUIPA by failing to serve him the same meal catered from Popeye's restaurant that other Muslim prisoners received to celebrate the end of the Ramadan fast,

1

an event known as Eid-ul-Fitr ("Eid feast").[1] The material facts surrounding the incident giving rise to this lawsuit are undisputed. The Plaintiff received a regular meal tray following the Varner Super Max (VSM) Warden's decision not to serve the catered portion of the meal to Muslim inmates within the VSM due to security concerns.

ADC Defendants Chaplain Charles Freyder, VSM Warden Grant Harris, and Ray Hobbs, the VSM Deputy and Assistant Director, have moved for summary judgment based on the following: 1) the Eid feast is not a "required" holiday in the Muslim faith; 2) the Plaintiff does not have a sincerely held religious belief that he must participate in the Ramadan fast and Eid feast; 3) there are no special foods or quantities of food that a Muslim must consume during the Eid feast; 4) serving a catered meal to inmates within the VSM creates security and logistical problems; and 5) it would be gratuitous for the ADC to allow an inmate in an administratively segregated area to participate with other Muslims during the Eid feast.[2] In support of their claim, the Defendants submitted exhibits including declarations by Defendant Chaplain Freyder and ADC Muslim Chaplain Muhammad Ameen and a certified list of the Plaintiff's numerous violations of prison rules to show the insincerity of the Plaintiff's adherence to Islam. The Defendants

---

[1] According to ADC Policy 550, citing the Koran, Eid ul-Fitr ("Festival of Fast-breaking") celebrates the completion of the Ramadan fast and should be held within four days following the end of Ramadan. Defendants' Exhibit C-1, at § 1(b).

[2] The Defendants' motion additionally addresses the Plaintiff's motion for a preliminary injunction. The court entered an order (docket entry #47) denying that motion on February 22, 2007.

2

also argue that the Court should grant summary judgment on the basis of qualified immunity.

The Plaintiff's response to the Defendants' motion is that the Defendants burdened his religious exercise rights because he received the same meal as non-Muslim inmates; therefore, the Defendants did not allow him to enjoy a true "feast." The Plaintiff also contends that the Defendants did not allow him to celebrate the Eid feast in spiritual solidarity with other Muslims since he did not have the same catered meal of Popeye's chicken as other Muslim inmates in the general population. He argues that this denial was an attempt to create dissension among Muslim inmates, which further hindered his religious exercise.

Parties in this matter have consented to jurisdiction by magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## II.  Law and Analysis

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See *Anderson,* 477 U.S. at 248-49; see also *Hartnagel v. Norman,* 953 F.2d 394, 395-96 (8th Cir.1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247-48 (emphasis omitted). If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. *See Celotex,* 477 U.S. at 322.

## A. RLUIPA

The Plaintiff filed this action alleging violation of both the Free Exercise clause of the First Amendment and RLUIPA. After the Defendants filed their Motion for Summary Judgment, the Plaintiff moved to withdraw his First Amendment claim (docket entry #35). A prison inmate may bring an action challenging an institution's impingement on the ability to participate in religious activities under both the First Amendment and RLUIPA; therefore, the court grants the Plaintiff's motion to withdraw his First Amendment claim and to proceed only on his claims under RLUIPA.

Although the Plaintiff filed this action alleging violation of his free exercise of religion rights under both the First Amendment and RLUIPA, the Defendants' Motion and Brief in Support assumes that this case turns on whether Defendants' actions meet the rational basis test applicable for First Amendment claims in the prison context.[3] While

---

[3] A claim of a violation of the Free Exercise clause of the First Amendment in the prison context receives a lesser standard of scrutiny than if raised by a member of the general public. *Turner v. Safley*, 482 U.S. 78, 81 (1987). Prison actions, regulations, and restrictions may be valid if they are "reasonably related to legitimate penological interests." *Id*. at 89.

4

the rational basis test applies to First Amendment claims brought by prisoners, Congress has established a higher level of scrutiny for free exercise claims brought under RLUIPA:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

RLUIPA requires that a plaintiff first demonstrate that there is a substantial burden on his ability to exercise his religion. 42 U.S.C. § 2000cc-2(b). To constitute a "substantial burden," the plaintiff must show that the burdened activity is "religious exercise," and that the government policy or actions significantly inhibits religious expression that "manifests some central tenet" of his or her religious beliefs, "meaningfully curtail[s] a [the] ability to express adherence to his faith," or "den[ies] a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion." *Murphy v. Missouri Dep't of Corrections*, 372 F.3d 979, 988 (8th Cir. 2004) (citing *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997)) (citations omitted).

If a plaintiff successfully shows that there is a substantial burden on his religious expression, the government must demonstrate that the imposition of the substantial burden: (1) is in furtherance of a compelling governmental interest; and (2) is the least

5

restrictive means of furthering that governmental interest. 42 U.S.C. § 2000cc-1(a); *Murphy,* 372 F.3d at 986-87.

Although prison officials are required to meet a higher burden under RLUIPA's strict-scrutiny standard than under the rational-basis test applicable to First Amendment claims, prison officials must nevertheless be accorded some deference in evaluating whether they have met their burden. *Murphy,* 372 F.3d at 987. RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

Analyzing the constitutionality of RLUIPA in *Cutter*, the United States Supreme Court noted that RLUIPA should be applied "in an appropriately balanced way, with particular sensitivity to security concerns." *Id*. While RLUIPA adopts a strict-scrutiny standard, "[l]awmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions." *Id*. at 723.

Under a RLUIPA analysis, the first question is whether the Plaintiff can show that the Defendants' failure to serve him catered Popeye's chicken for the Eid feast either constituted a significant impingement of his religious expression that is part of a central tenet of Islam, or meaningfully prevented him from expressing adherence to his Islamic faith, or denied him an opportunity to engage in a fundamental activity of Islam. See *Murphy*, 372 F.3d at 988.

Chief Judge J. Leon Holmes addressed the issue of regular meal trays, catered food, and the Eid feast in the unreported case *Johnson v. Harmon*, No. 03-468, 2005 U.S.

6

Dist. LEXIS 37105 (E.D. Ark. Jul 1, 2005), *aff'd*, 205 Fed.Appx. 476 (8th Cir. 2006). Like the Plaintiff in this case, the Muslim plaintiff in *Johnson* claimed that the ADC violated his free exercise of religion rights by serving him his regular meal tray in VSM, instead of catered food trays served to Muslim inmates in the general prison population. Judge Holmes held in *Johnson* that, while the plaintiff held a sincere desire to participate in the Eid feast, "which was firmly based in Muslim teachings," the regular meal tray he received instead of a special meal tray was not a burden or infringement on the exercise of his beliefs "because it was undisputed that Plaintiff could have derived the full benefit of Eid Feast simply by consuming his regular VSM food tray in the spirit, mind set, and prayerfulness which is the essence of that religious holiday." *Id*. at 16.

The Defendants in this action submitted supporting declarations from Defendant VSM Chaplain Freyder and ADC Muslim Chaplain Muhammad Ameen. Chaplain Ameen states that while participation in the Eid feast is a "highly recommended tradition" it is "not a requirement for inmates," especially for those Muslim inmates in the administratively segregated areas of prison, who "are not entitled to the same privileges as free-world Muslims." Defendants' Exhibit F, at § 4. Chaplain Ameen states that "the food to be consumed during the Eid feast need only be food approved to be served by the prison and should not contain pork. There are no special quantities that a Muslim must consume during the feast." *Id*. at § 5.

Defendant Chaplain Freyder's declaration states that under ADC Policy No. 550, inmates observe the Eid feast under their conditions of confinement, and that he informed

the Plaintiff during Ramadan that he was not approved to participate with other Muslims in the general population or eat the same catered food as them because he was in isolation for disciplinary violations. See Defendants' Exhibit B, at §§ 3, 11. Defendant Freyder informed the Plaintiff he would be served a meal from the prison kitchen in the same manner as evening meals were provided during Ramadan. *Id*. at § 11. Like Chaplain Ameen, Defendant Freyder's declaration states that "it is not a requirement of the Muslim religion that followers participate in the Eid feast and fellowship with other Muslims following the Ramadan fasting period, and there are no special foods or quantities of food that a Muslim must consume during the Eid feast." *Id*. at § 15.

      The Plaintiff responds to the Defendants' arguments, declarations, and reliance on the findings of the *Johnson* court by pointing out that the plaintiff in *Johnson* brought his Eid feast claim under the First Amendment and thus received a lesser degree of scrutiny. He argues that, because he was unable to observe the Eid feast in spiritual "solidarity" with other Muslims when he was not served the same meal they were, he was unable to approach the Eid feast in the "proper spirit, mind set, [and] prayerfulness" necessary to experience "all of the religious experiential aspects of Ramadan" and the Eid feast as discussed in *Johnson*. Plaintiff's Response, at § 5(c). Additionally, the Plaintiff argues that "[w]hile Islam may not have formally prescribed a particular amount or type of food to be served for the Eid feast," he "sincerely believed that in order to be deemed a 'feast,' the food served must be significantly distinguishable from the regular common fare served to non-Muslim inmates." *Id*. Finally, the Plaintiff states that the Defendants

purposely acted to create dissension among Muslim inmates by providing only him a regular meal tray and that this also prevented him from approaching the Eid feast in the proper spirit, which contributed to the substantial burden on his religious exercise.

The Eighth Circuit has counseled caution in finding that a plaintiff fails to meet the threshold showing of a substantial burden to a religious exercise under RLUIPA based upon a motion for summary judgment. Holding that the district court "improperly concluded on summary judgment that [plaintiff's] religion was not substantially burdened," the Eighth Circuit noted in *Murphy*, *supra*, 372 F.3d at 988, that the nature of this determination, like the threshold analysis under a First Amendment claim, is a factual determination.

Because RLUIPA requires a broad construction in order to ensure the protection of religious exercise, 42 U.S.C. § 2000cc-3(g), I find that the arguments presented by the Plaintiff meet the threshold requirement of a substantial burden on a religious exercise. It is a rare instance when a court can determine that a person is, or is not, a sincere follower of a particular faith. Furthermore, the Defendants miss the mark in asking the court to determine that the Eid Feast is not a "requirement" of Islam. First, that is not the standard. See *Murphy, supra.* Second, the ADC itself recognizes the Eid Feast as a holiday Muslim inmates may not only celebrate but also celebrate with catered food. Defendants' Exhibit C.

The Defendants still prevail in their motion for summary judgment, however, because they have demonstrated a compelling government interest in imposing this

burden on the Plaintiff. The Defendants' motion includes a copy of ADC Policy No. 550, which sets out prison policy on the celebration of Ramadan and Eid feasts. According to the declarations of Defendants Warden Harris and Deputy Director Hobbs, the policy "exists for security, efficiency, and reformative purposes." Defendants' Exhibits C, at § 4; D, at § 4. The policy includes a provision allowing for catered food items, paid for by inmate or private donations, for Muslim inmates to celebrate the Eid feasts. See Defendant's Exhibit C-1, at § 3(j). The policy also stipulates that the Unit Warden has discretion to direct that the Eid meals be provided entirely by the prison kitchen in the same manner that Ramadan evening meals are provided if he "feels that there are particular problems with costs, logistics, or security." *Id*. at § 3(i).

Defendant Warden Harris states in his declaration that the Plaintiff was confined to the administratively segregated area of VSM during Ramadan for violating prison rules and regulations, a fact that Plaintiff does not contest. Defendants' Exhibit D, at §§ 2, 4. According to Warden Harris's declaration, catered meals create security and staffing burdens because meals prepared outside prison control require that staff search each tray for contraband prior to delivery to the prisoners. *Id*. at § 4. Additionally, Defendant Harris states that serving inmates placed in segregation at VSM for violating prison rules catered meals is counter-productive to prison "reformative strategy" and "creates the impression of favoritism among other inmates." *Id*. at § 5. Prison officials must maintain the ability to ensure safety, security, order, and discipline. Their decisions are entitled to some deference.

As a matter of law, the Defendants' proffered reasons for denying catered food, prepared outside the security of the prison, to inmates such as Mr. Muhammad, who are confined to administrative segregation for violation of prison rules, meets the strict scrutiny standard of RLUIPA. Defendants have come forward with compelling reasons for the policy for their refusal to permit Plaintiff to receive catered food for the Eid feast.

The final question under RLUIPA is whether the substantial burden to the Plaintiff's religious exercise was the least restrictive means available to the Defendants in meeting compelling interests. Defendant Deputy Director Hobbs's declaration states that ADC Policy No. 550 exists for "security, efficiency and reformative purposes," and that the ADC "considered a number of options with regard to this issue; however it was concluded that Policy 550 best meets the ADC's interest and concerns with security while providing the inmates in segregation an adequate means to participate in the celebration of their faith." Defendants' Exhibit C-1, at § 4. As the Supreme Court has held, RLUIPA's heightened scrutiny does not "elevate accommodation of religious observances over an institution's need to maintain order and safety," and prison officials must be granted deference in evaluating the least restrictive means available to meet compelling interests of maintaining security and order. *Cutter*, *supra*, 544 U.S. at 722; see also *Murphy*, *supra*, 372 F.3d at 987. Evidence including ADC Policy No. 550 and the Defendants' declarations show that Muslim inmates' religious exercise rights are accommodated by allowing the observance of Eid feasts and catered meals served under the prisoners' conditions of confinement. As a matter of law, Defendants have

11

demonstrated that they have used the least restrictive means available to accommodate the prisoners' rights while maintaining prison security and discipline. The Defendants' actions survive RLUIPA's strict-scrutiny test, and they are entitled to summary judgment.

### B. QUALIFIED IMMUNITY

All Defendants would be entitled to qualified immunity based on Judge Holmes's opinion in *Johnson*, even if they were not entitled to summary judgment. Qualified immunity "shields government officials from civil liability in circumstances where 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lyles v. City of Barling*, 181 F.3d 914, 917 (8th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court noted the importance of qualified immunity in "protecting government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service." *Weiler v. Puckett*, 137 F.3d 1047, 1049 (8th Cir. 1998) (citing *Richardson v. McKnight*, 529 U.S. 399 (1997). Defendants were entitled reasonably to infer from Judge Holmes' opinion in *Johnson* that they could restrict prisoners who are in administrative segregation to observing the Eid feast under the conditions of their confinement. It would not be apparent to reasonable prison officials at the Varner Super Max, that serving the Plaintiff his regular meal tray while Muslim inmates in other areas were served a special meal tray of catered chicken violated his religious exercise rights.

## III. CONCLUSION

The Plaintiff's motion to withdraw his First Amendment claim (docket entry #35) is granted. Although the Defendants' Motion for Summary Judgment addressed only the Plaintiff's First Amendment claim and not the statutorily-heightened standard of inquiry under RLUIPA, the Defendants in fact did use the least restrictive means available to meet the competing interests of the Plaintiff's right to religious exercise and the government's need to maintain security and order. Accordingly, the Defendants' Motion for Summary Judgment (docket entry #29) is granted and the Plaintiff's Complaint (docket entry #2) is dismissed with prejudice. All other pending motions are denied as moot.

IT IS SO ORDERED this 12th day of April, 2007.

_____
UNITED STATES MAGISTRATE JUDGE